NicholsoN, C. J.,
delivered the opinion of the Court.
Plaintiff in error and three others, (all colored,) were indicted in the Circuit Court of Coffee county, for an assault with intent to commit murder in the first degree, upon Leauder Carden, (prosecutor,) and William Keele. Defendant alone was tried, the other three having fled the country. The defendant was found guilty, and sentenced to three years’ imprisonment in the Penitentiary; from which judgment he has appealed. We find no error in the record, either in the admission or rejection of evidence, or in the charge of the judge, on which the defendant is entitled to a new trial. The only question which we deem it necessary to examine, is, whether the evidence was sufficient to support the finding of the jury.
*422 The facts necessary to be noticed, are as follows: On the evening of the day on which the assault is alleged to have been made, defendant, in company with two other colored men, (Alfred Davis and David Love,) was returning from his work towards his home, when they met the prosecutor, Leander Carden, W. C. Carden, Win. Keele, Granville Keele, Richard Henly, and a colored man named Henry Keele. Defendant had fallen behind the other two, when they met and passed the prosecutor and his company. It appears tliat, for some reason unexplained, when the prosecutor and his company met defendant, they got into some difficulty, which resulted in the defendant running, and their pursuing him to the house of Alfred Davis. When they reached Davis7 house, near to which was defendant’s, they first assaulted and beat David Love, and then they fell upon Alfred Davis, and beat and cut him in a cruel manner. Soon after the prosecutor and his company left, defendant came up and was immediately sent for the doctor to come and visit Alfred Davis. While he was gone, Riley Love, (colored,) came to his house and took away his gun. It appears that soon after the prosecutor and his company left Davis’ house, four colored men, Riley Love, Roily Neill, John Osborn and Horace Armstrong, followed after them on the look of Henry Keele, the colored man who was engaged in the riot at Davis’. Defendant said to a witness, that they were looking for Henry Keele to punish him. They passed by Mrs. Keele’s, where the prosecutor and several of his company lived. At the time they passed, the prosecutor and his company were eating supper. The four» negroes passed without stopping or making any in *423 quiry, and went about one hundred yards farther, to the house of Julia Bailey, where Henry Neele lived. She says she saw but four men in the yard. She knew but two of them — Horace Armstrong and Riley Love — don’t know that defendant was there — she had not known him, and could not now say that he was one of the men there.
She asked them what they wanted; they said, “nothing —no harm;” they then asked if Henry Neele was there. She answered, “no, and she did not know where he was.” They then asked, “where is Tobe and Bill?” They then said, “Come, let us go.” Just after that, she saw some person or persons coming up the lane from towards Mrs. Neele’s, and soon saw prosecutor and Mr. Neele walking up near the gate, and heard prosecutor say, “Boys, what’s up?” or, “what’s up now?” and they replied, “Nothing.” She saw that the prosecutor had a gun, and' about this time she went into her house, and neither heard nor saw any thing more.
The prosecutor proves, that after the negroes passed Mrs. Neele’s, he heard the dogs barking, and the talking at Julia Bailey’s. The prosecutor took his gun, and in company with Mr. Neele, went up to Julia Bailey’s, remarking that he would go and see what was up. When they reached the gate near the house of Julia Bailey, he saw four or five men standing in the yard; he is not certain whether there was more than four; thinks he saw three guns in their hands; he could not tell who any of them were; could not say that defendant was there. When they walked up to the gate, prosecutor asked: “Boys, what is up now?” Some one remarked, or re *424 plied: “Nothing, G — d damn it; we will show you;” and immediately after, prosecutor observed a gun being raised, and jumped behind the gate post. ICeele also ran behind a post, and soon the gun was fired. Prosecutor said, “If that is your game, I’ll help you,” and immediately fired, and then another time, and a third fire from the other side. After prosecutor fired the second time, he and Neele ran off; and as they ran off, another gun was fired. Prosecutor said he aimed to do execution, and afterwards found a dead negro there. Horace Armstrong was the negro killed.
Another witness proves that after Horace Armstrong was killed, defendant told him he was up there, but that he had nothing to do with the shooting.
Defendant said to the doctor, on his way to see Alfred Davis, talking about Henry Neele and the Cardens, and other white men, that he would have revenge if he had to bum up Panhandle Creek.
Thomas Davenport proves, that on the night after the affray at Alfred Davis’, the several, negroes indicted were at his grocery, wanting whisky. He would not sell it without the money. They were talking about the Car-dens, and other white men, and one negro named Henry Neele, having been engaged in the affray; and were talking about going up to Crossland Branch, and threatened they would kill the negro and -make mince meat of the others. He could not state that defendant made any threats; is not certain that he did. They were all three together, and talking, but can not be certain that defendant, or which ones, used threatening words.
It was in proof that all the parties charged in the *425 indictment fled from the county, except defendant; that he had remained, and that he was of good character.
The proof, as it is presented in the record, makes out a most wanton and unprovoked assault and battery by the prosecutor and his company, upon David Love and Alfred Davis. It was well calculated to arouse the worst passions of the parties abused, and their colored friends. It was especially calculated to excite them against one of tbeir own color, who seems to have taken an active part in the assault and battery. If the injury had been resented immediately, the consequences, whatever they might have been, could hardly have amounted to murder in the first degree. It was fairly left to the jury, whether the shooting which afterwards occurred at Julia Bailey’s, took place under the passion provoked by the assault and battery at Davis’; or whether it was made with deliberation and premeditation, after the passions had time to cool. The jury found that the assault, at Julia Bailey’s, was made after sufficient cooling time to deprive the defendant of the benefit of the defense of having acted under passion produced by recent provocation.
We think the evidence justifies their conclusion as to this point in the case. The proof leaves no room to doubt as to the presence of defendant when the shooting took place. He distinctly admitted to two witnesses that he was present; and it is proved by another that he was in company with the other parties indicted when they were probably on their way to the place where the shooting occurred.
But the questions of difficulty are: First, with what intent did defendant go to the place; and second, if he *426 did not go there with the intent to kill and murder the prosecutor and "Wm. Keele, as charged in the indictment, was the assault made upon such intent formed after reaching the place of the shooting?
The charge is, that defendant assaulted the prosecutor' and ¥m, Keele with intent to commit murder in the first degree.
Defendant said to the doctor that, “he would have revenge, if he had to burn up Panhandle Creek;” and to Davenport, some of the four indicted — all talking together — said, “they would kill the negro Henry Keele, and make mince meat of the others.” Although it is not shown that defendant made this' threat, yet it was made in his presence, and he made no dissent. It is in proof that the parties indicted passed by the house where the negro Henry Keele was living. "When they reached the house of Julia Bailey, they first ' asked for Henry Keele, the negro, and not finding him, they then asked where Tobe and Bill Avere, (meaning, as we infer, the prosecutor and Win. Keele.) This proof makes it certain that the four negroes indicted started out armed, for the purpose of having revenge. Their object was, first, to take revenge upon Henry Keele, and that was clearly their purpose in going to Julia Bailey’s, where he lived. It is clear, also, that they intended to have revenge on Henry Keele, by taking his life. The proof shows, also, that they had formed the purpose to take revenge on the prosecutor and Wm. Keele, but it is not apparent what was the measure of revenge contemplated as to them. They threatened “to kill Henry Keele,” the negro, but “to make mince meat” of the white men. This may have *427 meant, and probably did, that they would inflict great bodily harm on them; or, as defendant said to the doctor, “would have revenge by burning up Panhandle Creek.” We are, therefore, not satisfied that the intent with which defendant went to the house of Julia Bailey was, to take the life of the prosecutor and Wm. Keele.
But, in the second place, when the prosecutor and Wm. Keele were fired at from Julia Bailey’s yard, was it done with the deliberation and premeditation which were necessary to constitute murder in the first degree; and did defendant concur in this intent? It is to be observed that the four negroes indicted passed by the house where the. prosecutor was, without stopping or making any hostile demonstration, nor had they indicated any criminal purpose after reaching Julia Bailey’s house.
The prosecutor and Wm. Keele were induced to follow them by hearing the barking of dogs and the talking of the negroes. The prosecutor arms himself, and takes Wm. Keele with him, and follows on to see what is up now. Julia Bailey tells what occurred before the prosecutor arrived. The four negroes asked for Henry Keele. Upon finding that he was not there, they asked where Tobe and Bill were. She saw the prosecutor and Wm. Keele approach the gate, and heard the prosecutor ask, “Boys, what’s up now?” and the reply, “Nothing.” This is all she heard or saw. She . did not hear the remark, “G — d damn it, we will show you,” which the prosecutor says was made a part of the reply to his question, “Boys, what’s up now?” She saw nothing of the raising of the gun by one of the four negroes in the yard, which the prosecutor said occurred “immediately *428 after” the reply to his question. Julia Bailey ’ says that she went into her house about the time the prosecutor asked, “Boys, what’s up now?” but she heard the reply, “Nothing.” She was standing at her door. The ne-groes, as stated by the prosecutor, were in the yard, between the gate and the house. Yet Julia Bailey heard nothing of that part of the reply, “ G — d damn it, we will show you;” nor did she see any of them raising his gun, down to the time when she entered her house and closed her door. Nothing had been said or done, as far as she saw or heard, which indicated any purpose to make an assault upon the prosecutor and "Win. Keele. The case, then, turns upon the evidence of the prosecutor and ¥m. Keele, alone. It must be borne in mind that the prosecutor admits he shot and killed one of the four negroes — Horace Armstrong. It must be remembered that the prosecutor and Wm, Keele had just reached home, after having made a most brutal attack upon David Love and Alfred Davis. It must also be observed that there is no satisfactory reason given why the prosecutor armed himself and followed the four ne-groes to Julia Bailey’s. The result of this going there was, that shooting took place, in which the prosecutor killed the negro, Horace Armstrong. "We are bound to weigh the evidence of the prosecutor and ¥m. Keele in the light of the surrounding circumstances. Although they escaped unhurt, and have killed one of the negroes, a prosecution is commenced against all of the other ne-groes for an assault with intent to commit murder. All except the defendant, fly from the country. The defendant, being prosecuted, can not testify. The whole *429 case, therefore, rests with the two witnesses, whose highest interest is, that defendant shall be convicted; for, if the four negroes are not guilty of the charge of assault with intent to kill, then the presumption is strong, that the prosecutor and ¥m. Neele are guilty of felonious homicide. Under such circumstances, we feel bound to emphasize the fact that the prosecutor’s evidence is not sustained by that of Julia Bailey, as to the reply of the negro, “G — d damn it, we will show you,” -nor as to the fact of one of the negroes raising his gun immediately after the reply was made. From her location, Julia Bailey ought to have heard this part of the reply as well as the first, and she ought to have seen the raising of the gun. In view of the several circumstances calculated to detract from the evidence of the prosecutor and ¥m. Neele, we are not fully satisfied that the jury were justified in returning a verdict of guilty on the evidence.
But assuming that the facts as to the origin of the shooting are entirely reliable, we are not satisfied that it took place with that deliberation and premeditation necessary to make out the charge in the indictment. The fact that the prosecutor and ¥m, Neele followed the negroes to Julia Bailey’s; that they -were two of the men that just before had assaulted and beaten and stabbed one of their color, and that they approached them armed, may very well have produced the impression that their purpose was to make another attack. We can not see that there was any time for deliberation, or that there was any premeditation; and especially we see no ground to assume that there was any con *430 sultation, or any concert of action among the four ne-groes. The prosecutor represents the reply of one of the negroes to his question, and the act of raising his gun, as almost simultaneous. It has the appearance of a sudden, hurried attempt to get the first shot, to avoid an apprehended attack. There could have been no time for consultation; nor can we see that there was that deliberation and premeditation necessary to make out the charge. We are not satisfied by the proof that the defendant participated with that deliberate and premeditated intent which it is incumbent on the State to make out in such a case. We are, therefore, of opinion that the Circuit Judge erred in refusing a new trial.
Let the judgment be reversed, and a new trial awarded.